IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MELODY RUSSELL,<br><br>v.<br><br>GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC. | Civil Action No. CCB-21-2129 |

## MEMORANDUM

Two motions are pending before the court: (1) the plaintiff Melody Russell's motion to modify the Scheduling Order and to amend her complaint to add a second defendant, (ECF 12), and (2) the defendant General Dynamics Information Technology Inc.'s motion to file a surreply in opposition to that motion, (ECF 19). The motions are fully briefed and no oral argument is necessary. *See* Local Rule 105.6. For the reasons below, the court will deny the plaintiff's motion. As a result, the court will deny as moot the defendant's corresponding motion to file a surreply.

## BACKGROUND

The pending motions stem from a federal employment discrimination lawsuit brought under Title VII of the Civil Rights Act by the plaintiff, Melody Russell, against her former employer, General Dynamics Technology Inc. General Dynamics hired Russell as a cyber security analyst in March 2020 and assigned her to work as a consultant on a project for its client, VariQ. (ECF 1 ¶ 8, Compl.).

Russell alleges that throughout the course of her work on the VariQ contract, she was subjected to discrimination on the basis of her sex, religion, and disability status by a VariQ employee. (*Id.* ¶ 13). After consulting for VariQ for nearly one year, Russell lodged an informal

complaint about her treatment in the form of a lengthy and detailed letter. (*Id.* ¶ 12). She sent the letter to Mark Sieg, a VariQ employee acting as her client-side program manager on the VariQ project. (*Id.* ¶¶ 9, 12). After receiving the letter, Sieg met with Russell to discuss the allegations, but apparently dismissed them, leaving Russell with an admonishment along the lines of "the customer is always right." (*Id.* ¶ 16). General Dynamics' human resources department also met with Russell, informing her they would investigate her allegations, including by engaging with her VariQ counterparts. (*Id.* ¶¶ 17-18).

Just one month after Russell filed her discrimination complaint, General Dynamics served her with a "working notice" explaining that "the client" had requested she be removed from the project and informing her that, as a result, General Dynamics could terminate her within two weeks. (*See* ECF 14-1). Two weeks later, General Dynamics indeed terminated her employment, again invoking "the client's request for [her] removal from the contract." (ECF 14-2). In response, Russell filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and subsequently obtained an EEOC right to sue letter. (ECF 1 ¶ 6). With her EEOC letter in hand, Russell brought this suit in August 2021.

Three months after Russell filed her civil complaint in this lawsuit, in November 2021, this court entered a Scheduling Order and opened the discovery period. (ECF 7, Sched. Order). The Order set the deadline for joining parties and amending pleadings for the following month, December 20, 2021. (*Id.*). It set the discovery deadline for four months later, March 21, 2022, (*id.*), but later extended the deadline by one month to April 22, 2022, due to delays in the parties' scheduling of depositions, (ECF 10, Mot. to Am. Sched. Order; ECF 11, Mod. Sched. Order).

In early December 2021, not long after the discovery period opened, the plaintiff served her initial discovery requests. (ECF 12 at 1-2). The defendant produced responsive documents two

2

months later, in February 2022. (*Id.*). Among these documents were two emails sent by Sieg—Russell's VariQ program manager—related to her termination. In the first email, Sieg provides the results of VariQ's internal investigation into Russell's claims, concluding her allegations were baseless. (ECF 12-3). In the second email, Sieg recommends General Dynamics terminate Russell's involvement with the VariQ contract. (ECF 12-4). General Dynamics issued Russell's two-week working notice two days after Sieg's email suggesting she be terminated.

Russell's motion to amend the Scheduling Order, and her complaint, is predicated on the discovery of these emails. On April 11, 2022, just two weeks before the close of discovery (and two months after the documents were produced) Russell moved to amend the deadline for joining new parties and to amend her complaint to add VariQ as a defendant. The motion asserts that amendment is proper because the emails "did not come to light until after the amendment deadline" and were "needed" to add claims against VariQ. (ECF 12 at 2, 4). General Dynamics opposed the motion for, among other reasons, Russell's failure to attach a copy of her proposed amended complaint as Local Rule 103.6 requires. Russell subsequently attached the proposed amended complaint to her reply brief, and General Dynamics moved for leave to file a surreply to respond to the newly added material, which Russell opposed.

## ANALYSIS

Russell moves to amend her complaint to add a state law claim against VariQ under the Maryland Fair Employment Practices Act, and because the deadline to join parties expired prior to the plaintiff filing her motion, she also moves to modify the Scheduling Order to accommodate her amendment. To determine whether Russell's dual-modification request is proper, the court conducts a two-step inquiry: it assesses (1) whether there is good cause to modify the Scheduling Order under Rule 16(b), and (2) whether amending the complaint is proper under Rule

3

15(a). *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 106–07 (D. Md. 2013). For the following reasons, the court concludes Russell has not satisfied Rule 16(b)'s good cause requirement, so it need not determine whether Rule 15(a) is satisfied.

Rule 16(b)'s good cause standard "requires the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence." *McMillan v. Cumberland Cnty. Bd. of Educ.*, 734 F. App'x 836, 845–46 (4th Cir. 2018), *as amended* (Apr. 4, 2018) (quoting *Cook v. Howard*, 484 Fed. App'x. 805, 815 (4th Cir. 2012)).[1] "[T]he good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule." *McMillan*, 734 F. App'x at 846 (quoting *Cook*, 484 Fed. App'x. at 815). The factors the court considers include whether the non-moving party could be prejudiced by the delay, the length of the delay, and whether the movant acted in good faith. *Tawwaab v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 768–69 (D. Md. 2010).

Here, the plaintiff contends that newly discovered evidence provides good cause to amend the Scheduling Order. Specifically, the plaintiff invokes the two emails sent by her VariQ supervisor, Mark Sieg, which the defendant produced two months after the deadline for joining new parties expired. The first email summarizes Sieg's view that Russell's discrimination claims are not "valid." (ECF 12-3). The second email is Sieg's recommendation to Russell's supervisor that Russell's work for VariQ be terminated. (ECF 12-4). The plaintiff claims she "needed" this evidence to bring a claim against VariQ, (ECF 12 at 4-5), because it revealed both "that VARIQ [was,] in part, responsible for Plaintiff's termination," (*Id.* at 5), and the extent of Sieg's

---

[1] Unpublished opinions are cited to for the soundness of their reasoning, not for any precedential value.

involvement in the decision to terminate her, (ECF 18 at 2), and thus amendment is proper because the evidence did not come to light until after the joinder deadline, (ECF 12 at 4-5).

In this context, however, the emails Russell relies upon do not show good cause. The plaintiff was made aware, in real time, that the request to terminate her employment came from VariQ directly. When General Dynamics placed her on a two-week working notice in March 2021, it specified that it was "*due to the client's request* to remove you from the Office of the Comptroller of the Currency – Cybersecurity Defense Center contract." (ECF 14-1) (emphasis added). Similarly, when General Dynamics provided her termination notice two weeks later, it reiterated that it was terminating her employment "*due to the client's request* for your removal from the contract for performance reasons." (ECF 14-2) (emphasis added). Russell's complaint makes clear that VariQ was her client while she was a General Dynamics employee, (ECF 1 ¶ 10), and although she protests that the letters did not "specifically mention VARIQ," (ECF 18 at 1), she suggests no other client for whom she worked on a "Comptroller of the Currency – Cybersecurity Defense Center contract," (*see* ECF 14-1), who might have rendered the reference ambiguous. Thus, Russell was on notice at the time of her discharge that the request came from VariQ directly and the court cannot say Sieg's emails showed for the first time "that VARIQ [was] in part, responsible for Plaintiff's termination." (*See* ECF 12 at 5).

Although Russell was plainly on notice as early as March 2021 that VariQ drove General Dynamics' decision to terminate her employment, she nevertheless maintains that the newly discovered emails reveal for the first time the extent of the involvement of Mark Sieg specifically. (ECF 18 at 1-2). Russell fails, however, to explain the legal significance of this detail in a potential lawsuit against VariQ; after all, it is VariQ, not Sieg, she seeks to join in this action, and, as discussed, VariQ's involvement in her discharge has long been clear. Moreover, Sieg's

involvement in VariQ's decision-making process should have been self-evident: Sieg was Russell's VariQ program manager, giving him natural influence over her employment status; Russell sent her letter explaining the nature of her discrimination allegations to Sieg himself; and General Dynamics' human resources team informed Russell they would be contacting VariQ about her allegations, where Sieg would be an obvious point of contact for the reasons just described. For each of these reasons, the plaintiff should have known Sieg was involved in the decision to terminate her, and even if she did not, she has failed to explain why she needed to confirm the extent of his individual involvement before bringing suit against VariQ. Because the court concludes that Russell was or should have been on notice of VariQ's—and Sieg's—role in her termination since the time she was discharged, and because she has not identified the legal significance of discovering the extent of Sieg's role, the court concludes that Russell could have met the joinder deadline through reasonably diligent action.

On top of the court's conclusion that Russell cannot justify missing the joinder deadline, granting Russell's motion to amend the Scheduling Order would prejudice the defendant. A proposed amendment that seeks to reopen fact discovery and invites redeposition of witnesses prejudices the non-moving party. *See Jackson as Next Friend of T.G. v. Balt. Curriculum Project, Inc.*, No. CV SAG-20-2433, 2022 WL 2315736, at *3 (D. Md. June 27, 2022). Here, the court's initial Scheduling Order set a discovery deadline of March 21, 2022, and a dispositive motions deadline of April 19, 2022. (ECF 7). At the parties' request, the court has already extended those deadlines once, to April 22, 2022, and May 23, 2022, respectively—an extension predicated on accommodating the parties' deposition schedules, not on the plaintiff's need to continue reviewing discovery. (ECF 11). Yet Russell did not file her motion to amend until April 11, 2022, after the initial discovery deadline had passed and just ten days before the modified discovery deadline was

set to expire. (ECF 12). Granting Russell's motion now would mean reopening fact discovery—possibly for months—while Russell seeks discovery from a new party. At the same time, adding a new party would likely require the defendant to take and defend additional depositions, including re-deposing fact witnesses it has already examined. "It is clear, then, that the [defendant] would suffer prejudice from the late-stage amendment." *Jackson*, 2022 WL 2315736, at *3. For the reasons already discussed, Russell has failed to justify that prejudice.

In sum, on this record, the court must conclude that at the time she was discharged, Russell was or should have been aware that VariQ played a substantial role in her termination. No legally significant new evidence has come to light in the interim. Thus, the court cannot say the plaintiff failed to meet the joinder deadline despite exercising due diligence, and Russell cannot justify the prejudice that reopening discovery would work on the defendant.

## CONCLUSION

For the foregoing reasons, the court will Deny Russell's motion to amend the Scheduling Order and to amend her complaint, and Deny as moot General Dynamics' motion to file a surreply. A separate Order follows.

| | |
|---|---|
|    11/1/2022    |     /s/     |
| Date | Catherine C. Blake |
| | United States District Judge |